IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WALTER BROWN,** | CIVIL NO. 1:CV-12-1135 |
| Petitioner | (Judge Rambo) |
| v. | |
| **WARDEN MONICA RECTENWALD, et al.,** | |
| Respondents | |

# **MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Walter Brown ("Brown"), an inmate confined at the Federal Correctional Institution - Medium at Allenwood ("FCI-Allenwood"), in White Deer, Pennsylvania. Brown alleges that his constitutional rights were violated in the context of a disciplinary proceeding. For the reasons that follow, the petition will be denied.

## I. **Facts**

On August 16, 2011, at approximately 8:30 a.m., FCI-Allenwood staff conducted a search of a six-man dormitory-style cell occupied by Brown and five other inmates and discovered a sharpened toothbrush hidden under the sink in the common area of the cell. (Doc. 6-1 at 12.) The toothbrush was sharpened to a point, had a handle made of tape and white string, and was approximately 7-1/2 inches in length. (*Id*.)

As a result of this discovery, Brown was issued an incident report on August 16, 2011, charging him with Possession, Manufacture or Introduction of a Weapon, in violation of Section 104 of the Bureau of Prisons' ("BOP") disciplinary code. (*Id*.) The incident report was delivered to Brown at 2:00 p.m. that same day.[1] (*Id*.) In addition, the other five inmates assigned to the cell were charged with the same violation, as no inmate claimed responsibility for the weapon. (Doc. 10 at 4.)[2]

On September 1, 2011, the Unit Disciplinary Committee ("UDC") held a hearing on Brown's charge and referred the charge to the Disciplinary Hearing Officer ("DHO") for further hearing. (Doc. 6-1 at 12.) At the UDC hearing, Brown signed the "Inmate Rights at Discipline Hearing" form, which informed him that since he was charged with a violation of BOP rules or regulations, the matter was being referred to the DHO for disposition. (*Id*. at 16.) Brown also signed the "Notice of Discipline Hearing Before the DHO" form. (*Id*. at 17.) On that form, Brown declined the services of a staff representative and requested no witnesses at the DHO hearing. (*Id*.)

---

[1] On or about August 24, 2011, the incident report was suspended pending referral to the Federal Bureau of Investigation ("FBI"), pursuant to BOP Program Statement 5270.09, Inmate Discipline Program, and 28 C.F.R. § 541.5(b)(2), which provide that the staff investigation of the incident report may be suspended before requesting the inmate's statement if the incident will be investigated for possible criminal prosecution. (*See* Doc. 6-1 at 13; Ex. 2, Doc. 6-1 at 22-26, 38-41.) The FBI declined further involvement on August 26, 2011. (Doc. 6-1 at 13.)

[2] Pursuant to the court's order dated December 18, 2012, (Doc. 9), Respondents provided additional briefing with this information, (Doc. 10).

2

The DHO held a hearing on September 14, 2011. (*See id*. at 19-21.) At the hearing, Brown acknowledged that he understood his rights before the DHO. (*Id*. at 19.) He waived staff representation and witness testimony, and made the following statement: "It's not mine." (*Id*.) Further, no procedural issues were cited and Brown presented no documentary evidence for the DHO to consider.[3] (*Id*.)

The DHO relied on the incident report and investigation, as well as Brown's statement, a memorandum from the staff member who discovered the weapon, and a photograph taken of the weapon found in the cell, to conclude that, by a greater weight of the evidence, Brown had committed the Code 104 violation, Possession, Manufacture or Introduction of a Weapon. (*Id*. at 19-20.) Specifically, the DHO concluded the following:

> The DHO believed the information provided by the staff member involved in the case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report. Inmates

---

[3] The DHO noted:

No procedural issues were cited and no documentary evidence was provided for consideration. Evidence was verbally provided by the DHO to the extent believed practical under FOIAE/PA policy. The inmate was advised to make any formal request for documents to the Central Office. The DHO noted a delay in the discipline process. This was due to the incident being referred to the FBI for prosecution. The DHO did not believe this delay infringed upon the inmate's ability to defend himself against the charged behavior, nor was it addressed . . . as an issue. With this, the hearing was continued.

(Doc. 6-1 at 19.)

> are responsible for items located in a shared, common area of the cell. The homemade weapon was hidden and located in the cell's sink. No inmate assigned to the cell claimed responsibility for the weapon throughout the disciplinary process which places equal responsibility with all inmates assigned to the cell.

(*Id*. at 20.) As a result, the DHO sanctioned Brown with sixty (60) days of disciplinary segregation, disallowance of thirty (30) days of good conduct time, forfeiture of 100 days of non-vested good conduct time, a six (6) month loss of telephone and visiting privileges, and a monetary fine of $101.00. (*Id*. at 20.) A copy of the DHO's report was provided to Brown on September 15, 2011. (*Id*. at 21.) Notably, the other five inmates assigned to the cell where the weapon was found also were charged and found in violation of possessing the weapon, as no inmate claimed responsibility for the weapon. (Doc. 10.)

## II. Discussion

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8.[4] These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an

---

[4] The BOP revised this section of Title 28 at 28 C.F.R. §§ 541 through 541.8, effective June 20, 2011.

investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. (*Id*.) If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. (*Id*.) Because Brown was charged with Possession, Manufacture or Introduction of a Weapon, an offense in the greatest severity category, the matter was referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the inmate receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder

as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

[Intentionally Left Blank]

In his petition, Brown challenges the sufficiency of the evidence used to find him guilty of the Code 104 violation.[5] In addressing Brown's petition, the court will address all of the procedural requirements in Brown's case.

---

[5] In his petition, Brown also makes an argument with respect to the circumstances of his housing FCI-Allenwood. Specifically, he claims that his six-man dormitory-style cell is in violation of BOP policy in that it is accessible to many inmates at once, and therefore he alone should not have been held accountable for the discovered weapon. (Doc. 1 at 4-5; Doc. 7 at 2-3.) To the extent that Brown is complaining about the conditions of his confinement, that claim will be dismissed without prejudice. It is well-settled that a habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement in prison. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Federal habeas corpus review is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002).

In contrast, where "a judgment in Petitioner's favor would not affect the fact or duration of Petitioner's incarceration, habeas relief is unavailable." *See Green v. Bledsoe*, Civ. No. 4:10-CV-0059, 2010 WL 1372409, at *1 (M.D. Pa. Apr. 5, 2010) (quoting *Suggs v. Bureau of Prisons*, Civ. No. 08-3613, 2008 WL 2966740, at *4 (D. N.J. July 31, 2008)). Rather, "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate." *Leamer*, 288 F.3d at 542. Where a federal inmate is challenging the conditions of his confinement, the filing of a *Bivens* action under 28 U.S.C. § 1331, the federal counterpart to a § 1983 action, is appropriate.

Here, Brown's challenge to his housing circumstances in FCI-Allenwood is not a challenge to the fact or duration of his confinement. He does not claim that his judgment of conviction was invalid or that he is being confined in prison unlawfully. Rather, Brown is complaining that his conditions of confinement violate his constitutional rights. This placement, however, does not affect the length of his sentence. Further, a decision in his favor would not alter his sentence or undo his conviction. Therefore, his claims are not properly asserted in a habeas petition brought under 28 U.S.C. § 2241, but rather could be pursued through the filing of a *Bivens* action. *See Bedenfield v. Lewisburg*, No. 10-1750, 2010 WL 3511507, at *1 (3d Cir. Sept. 9, 2010) ("Bedenfield's challenge to his placement in the SMU is analogous to the 'garden variety prison transfer' that we have indicated should be challenged in a civil rights action, not via a habeas petition"); *Green*, 2010 WL 1372409, at *2 (dismissing petitioner's § 2241 habeas petition challenging SMU placement as not cognizable under § 2241); *Woodruff v. Williamson*, Civ. No. 3:06-CV-2310, 2009 WL 703200, at *5 (M.D. Pa. Mar. 12, 2009) (same). Accordingly, this claim in the instant petition will be dismissed without prejudice to Brown's right to pursue his claims in a properly filed civil rights action. However, the court expresses no opinion as to the merits, if any, of any civil rights claim Brown may file based upon the facts asserted in the instant petition.

7

### A. Sufficiency of the Evidence

The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id*.

In the instant case, Brown is essentially challenging the application of the "constructive possession" doctrine which the DHO relied upon to find him guilty of the Code 104 violation. (Doc. 1 at 4-7.) Specifically, Brown claims that, even though there is a BOP policy holding him and his cellmates equally responsible for keeping the cell free of contraband,[6] he should not be held responsible for the discovered weapon because he had only been assigned to the cell for six days, he

---

[6] Under the BOP policy on inmate discipline, it is the responsibility of an inmate "to keep your area free of contraband." (Doc. 6 at 7) (quoting Program Statement 5270.09, Inmate Discipline Program, at 39).

8

shared the cell with five other inmates, and the housing unit was open and accessible to all inmates housed there throughout the day. (Doc. 1 at 4-7.)

> The application of the constructive possession doctrine has been upheld in the context of prison disciplinary proceedings that concerned the discovery of contraband in a shared room, for which no resident acknowledged responsibility. *See Tweedy v. Vannatta*, 101 F. App'x 158 (7th Cir. 2004) (marijuana found in cup in common area in two person cell); *Hamilton v. O'Leary*, 976 F.2d [341,] at 346 [(7th Cir. 1992)] (six weapons were found in air vent of cell shared by four inmates); *Okocci* [*v. Klein*], 270 F.Supp.2d [603,] at 613 [(E.D. Pa. 2003)] (weapon found in two-person cell); *White* [*v. Kane*], 860 F. Supp. [1075,] at 1079 [(E.D. Pa. 1994)] (applicable where contraband was found in cell assigned to one inmate, but which was accessible to other inmates in the prison).

*Briggs v. Marberry*, No. 06-244, 2008 WL 554927, at *8 (W.D. Pa. Feb. 28, 2008). "In the absence of direct evidence indicating an inmate's guilt of possession, the 'some evidence' standard may be satisfied where a small number of inmates are potentially guilty of the offense charged." *Santiago v. Nash*, 224 F. App'x 175, 177 (3d Cir. 2007) (unpublished opinion) (citing *White v. Kane*, 860 F. Supp. 1075, 1079 n.5 (E.D. Pa. 1994), *aff'd* 52 F.3d 319 (3d Cir. 1995). Several courts have adopted a probability analysis based on the number of prisoners having access to the area in which contraband is discovered. *Briggs*, 2008 WL 554927, at *8 (collecting cases); *see also Harms v. Godinez*, 829 F. Supp. 259, 264 (N.D. Ill. 1993) (holding that "[i]f a one-in-four chance of actual guilt does not violate the due process clause, then a

one-in-six chance of guilty does not either."). The United States Court of Appeals for the Third Circuit, however, has not articulated a limit on the constructive possession doctrine.

In the instant case, the DHO specifically noted that he considered the incident report and investigation, as well as Brown's own statement. (Doc. 6-1 at 19-21.) The DHO credited the reporting officer's account of the incident over Brown's, and found the charge to be supported based on the greater weight of evidence cited in the report. (*Id*. at 20.) Further, the DHO found that no inmate assigned to the cell claimed responsibility for the weapon during the disciplinary process, a process which places equal responsibility with all inmates assigned to the cell. (*Id*.) Brown also claims that the investigating officer failed to inform the DHO that one of his cellmates had, in fact, allegedly accepted responsibility for the weapon. (Doc. 1 at 2.) However, Brown also avers that this inmate recanted his statement. (*Id*.) Thus, in light of the evidence presented to the DHO, who made a credibility determination as to guilt, and pursuant to the doctrine of constructive possession, the court finds that there was "some evidence" to support the DHO's decision. The incident report and investigation, as well as the DHO's acknowledgment that "[n]o inmate assigned to the cell claimed responsibility for the weapon throughout the disciplinary process which

10

places equal responsibility with all inmates assigned to the cell," (Doc. 6-1 at 20), confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Brown's claim that there was insufficient evidence to support the DHO's decision.

### B. Notice of Charges and Investigation

The record demonstrates that Brown received adequate notice of the incident report from the investigating officer. (Doc. 6-1 at 12.) Under 28 C.F.R. § 541.5(a), "A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." *Id*. The record in this case reflects that Brown received notice of the charges against him at 2:00 p.m. on August 16, 2011, within 24 hours of the incident which took place at 8:30 a.m. that same day. (Doc. 6-1 at 12.)

Additionally, the record reflects that the charges against Brown were promptly investigated by both FCI-Allenwood staff and the FBI. (*Id*. at 12-13.) Following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.5(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa.

11

1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief). The record reflects that a BOP official, John Yearick, completed an investigation on August 16, 2011, within approximately 24 hours of the incident. (Doc. 6-1 at 14.) Brown was provided with the incident report on that same day. (*Id*. at 12.) Further, on August 24, 2011, the matter was referred to the FBI for possible prosecution. (*Id*. at 13.) The record reflects that the FBI investigated the matter and declined further involvement. (*Id*.) In addition, at the UDC hearing, Brown was advised of his rights and provided with the form "Notice of Discipline Hearing Before the DHO." (*Id*. at 16-17.) Since the record shows that an investigation was conducted by a BOP official and the FBI in a prompt manner and Brown was timely delivered the incident report, the court concludes that Brown was not prejudiced by a violation of BOP regulations such as failure to conduct an investigation. Thus, the petition will be denied with respect to any challenge to the notice of the charges and investigation.

### C. **Representation at DHO Hearing**

The record reflects that Brown was given the opportunity to have staff representation at the DHO hearing. (*Id*. at 19-21.) It is noted that a prisoner does not have a general constitutional right to have a staff representative appear on his behalf

12

in a disciplinary proceedings. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996); *see also Bermudez v. Holt*, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010). Rather, due process requires that inmates be provided with assistance only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. In this case, it is documented that Brown waived his right to the staff representation at the DHO hearing. (Doc. 6-1 at 19.) The DHO report also indicates that at the outset of the hearing, Brown was advised of his rights and he indicated that he understood those rights. (*Id.*) As there is no allegation that Brown is illiterate, and the issues involved in the case were not complex, the petition will be denied with respect to any challenge to staff representation.

### D. Statement, Witnesses, and Documentary Evidence

The record reflects that prior to the DHO hearing, Brown was advised of his rights with regard to making a statement and presenting witness testimony and documentary evidence, and indicated that he understood. (*Id.*) First, the court notes that Brown did make a statement. (*Id.*) There is nothing in the record reflecting that Brown was prevented from providing further testimony. Further, with respect to

13

witnesses, it is noted initially that the DHO is not required to call witnesses. "The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available. However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials." 28 C.F.R. § 541.8(f)(2). Here, the DHO noted that Brown did not request witnesses. (Doc. 6-1 at 19.) Although Brown asserts in his petition that the investigating officer failed to report to the DHO that another inmate claimed responsibility for the weapon, the DHO could not have relied upon this witness testimony due to the fact that the inmate recanted his statement. (Doc. 1 at 2.) The DHO did rely on, however, the incident report and investigation, as well as the prison policy that all inmates in a shared cell are required to keep their area free of contraband, in making his decision. As a result, the court cannot find that the lack of witness testimony and further documentary evidence at the DHO hearing resulted in a violation of Brown's due process rights. The petition will be denied with respect to any challenge to a right to make a statement and present witness testimony and documentary evidence.

### E. <u>Sanctions</u>

The record reflects that the sanction imposed by the DHO is within the limits prescribed in BOP regulations. (Doc. 6-1 at 20.) The sanctions that may be imposed upon a finding of guilt of a greatest category offense include, *inter alia*, forfeiting earned statutory good time, up to 12 months of disciplinary segregation, loss of privileges, and monetary fines. 28 C.F.R. § 541.3. Brown is not entitled to relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, Brown's penalties plainly fall "within the expected perimeters of the sentence imposed by a court of law," and does not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, the petition will be denied with respect to any challenge to the sanctions imposed.

**III.     Conclusion**

For the above stated reasons, the petition for writ of habeas corpus will be denied.  An appropriate order will issue.

                                                S/Sylvia H. Rambo,
                                                United States District Judge


Dated: January 22, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALTER BROWN,** | : | **CIVIL NO. 1:CV-12-1135** |
| Petitioner | : | (Judge Rambo) |
| v. | : | |
| **WARDEN MONICA RECTENWALD, et al.,** | : | |
| Respondents | : | |

# **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

S/Sylvia H. Rambo,
United States District Judge

Dated: January 22, 2013.